THE STATE, EX REL. HANTON ET AL., *v.* CITY OF CLEVELAND ET AL.

[Cite as State, ex rel. Hanton, v. City of Cleveland, 3 Ohio App. 2d 95.]

96

*Messrs. Barragate, Gottermeyer, Fahrenbach & Mottl* and *Mr. Charles E. Mosley, Jr.*, for relators.

*Mr. Bronis J. Klementowicz*, director of law, and *Mr. William T. McKnight*, for respondents.

SKEEL, J. This is an action in mandamus, filed in this court, seeking a writ to compel the Director of Public Safety to fill a claimed vacancy in the rank of Lieutenant of Police from the eligible list under the rules of civil service, such vacancy resulting by appointment of a Commissioner of Traffic Control. The sole question presented is whether there is a vacancy as to the rank of Lieutenant in the Cleveland Police Department.

The Cleveland Police Department is organized under the authority of Section 1.3502 of the Codified Ordinances of the City of Cleveland as authorized by Chapter 25 of the City Charter and Article XVIII of the Constitution of the state of Ohio. Section 7 of Article XVIII provides:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

Section 3 provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Section 116 of the Cleveland City Charter provides:

"Police Force—Control by Chief.

"The police force shall consist of a chief and such other officers, patrolmen and employes as may be provided by ordinance or resolution of the Council. In case of riot or like emergency the Mayor may appoint additional patrolmen and officers for temporary service who need not be in the classified service.

The Chief of Police shall be appointed by the Mayor from the Division of Police or he shall have had training and experience in law enforcement and he shall serve at the pleasure of the Mayor. Upon the termination of his service as Chief of Police, he shall if appointed from the Division of Police, revert to the civil service status held by him at the time of his appointment, in so far as it is competent for this Charter so to provide. The Chief of Police shall have exclusive control of the stationing and transfer of patrolmen and other officers and employes constituting the police force, under such rules and regulations as may be established by the Mayor or by the director of the department to whom the said Chief of Police may be immediately responsible.''

Under Section 126 of the Charter, subsection (2), it is provided:

''2. The classified service shall comprise all positions not specifically included by this charter in the unclassified service.''

There is no question that the officers and patrolmen of the Cleveland Police Department are, therefore, employed under civil service except such officers as are specifically excepted from appointment from an eligible list compiled by the civil service commission.

The relators' claims are based on this fact as hereinafter set out.

The organization of the police department is as authorized by Charter under Section 1.3502 of the Codified Ordinances as follows:

''There shall be and there is hereby established a Division of Police in the Department of Public Safety to be administered and controlled by a Chief of Police subject to the provisions of the Charter and ordinances of the City of Cleveland and to the direction of the Director of Public Safety.

''The Division of Police shall comprise the police force of the City of Cleveland and shall consist of the following ranks of such number of persons in each rank, who shall be appointed by the Director of Public Safety, unless otherwise provided by Charter, and who shall receive the annual compensation fixed by the Director of Public Safety, within the schedule of compensation hereby established for each rank:

| | "Minimum | Maximum |
|---|---|---|
| "1 Chief of Police | $14,364.00 | $15,720.00 |
| 4 Inspectors | 12,000.00 | 12,534.00 |
| 11 Deputy Inspectors | 10,380.00 | 10,878.00 |
| 1 Commissioner of Traffic Control | 10,380.00 | 10,878.00 |
| 24 Captains, one of whom shall be a woman | 9,516.00 | 9,978.00 |
| 68 Lieutenants, one of whom shall be a woman | 8,016.00 | 8,448.00 |
| 130 Sergeants, 3 of whom shall be women | 7,278.00 | 7,674.00 |
| 2500 Patrolmen, 50 of whom shall be women | | |
| First Year | 5,574.00 | 5,574.00 |
| Second Year | 6,096.00 | 6,096.00 |
| For all subsequent years | 6,600.00 | 6,960.00 |

"No person holding any of the above ranks in the Department of Public Safety shall perform any work which is of the same nature as or included within the duties of other classified employees of the city except as is immediately necessary to the performance of the duties of such rank and as is necessarily incident thereto."

As provided by the charter, the office of chief of police is exempted from appointment from an eligible civil service list. The Supreme Court in the case of *State, ex rel. Lynch,* v. *City of Cleveland,* 164 Ohio St. 437, held this provision of the charter constitutional. The syllabus provides:

"1. Under the provisions of Section 3 of Article XVIII of the Constitution of Ohio, municipalities have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws.

"2. Under those constitutional provisions a municipality is authorized to choose its own method of selecting its own chief of police other than from a civil service eligible list."

Section 133 of the charter, dealing with employees under civil service, provides:

"Wherever practicable, vacancies shall be filled by promo-

tion. Any advancement in rank or increase in salary beyond the limits fixed for the grade shall constitute a promotion. Lists shall be created and promotions made therefrom of candidates in the same manner as in original appointments; provided, however, that less than three shall constitute an eligible list, and the appointing authority shall appoint from the eligible list.''

Section 135 of the Cleveland Charter provides:

''The civil service commission shall maintain a list of all persons in the classified service, showing in connection with each name the position held, the date and character of each appointment and every subsequent change in status. Each appointing officer shall promptly transmit to the commission all information required for the establishment and maintenance of such list. The treasurer shall not pay, nor shall the commissioner of accounts issue a voucher for the payment of, any salary or compensation to any person holding a postion in the classified service unless the payroll or account of such salary or compensation shall bear the certificate of the civil service commission that the persons named therein have been appointed or employed and are performing service in accordance with the civil service provisions of this charter and the rules established thereunder. Any sums paid contrary to the provisions of this section may be recovered from any officer paying or authorizing the payment thereof and from the surety on his official bond.''

Section 130 of the Cleveland Charter provides:

''Eligible lists created by the commission shall remain in force not longer than two years. In the absence of an appropriate eligible list, any place may be filled temporarily, without test, for the period limited by the civil service rules, but not exceeding ninety days. During such period the commission shall hold the necessary tests for filling any such place permanently. With the consent of the commission, persons may be temporarily employed for transitory work without test, but no such employment shall continue for more than sixty days, or be renewed.''

Section 143.361, Revised Code, effective September 4, 1957, provides:

''In any city with a population of seven hundred thousand or more as shown by the last federal census, which by action of the legislative authority establishes within the police depart-

ment a unit assigned to the control of traffic, a member of the police department of said city who is appointed the head of such unit by whatever title designated, shall not be subject to competitive examination, notwithstanding Section 143.34 of the Revised Code. The status within the uniform ranks of such member while serving as the head of such traffic unit shall remain unchanged and notwithstanding the compensation fixed for such position, he shall not acquire any right to promotion other than such rights to promotion which apply to the rank held at the time of appointment as head of such traffic control unit.''

Following the passage of this section, the Council of the City of Cleveland passed an ordinance codified as Section 1.350201, entitled ''Traffic Control Unit,'' which is as follows:

''There is hereby established a Traffic Control Unit within the Division of Police to be headed by a member of the Division of Police appointed as such head and designated Commissioner of Traffic Control, who shall receive compensation at the rate fixed for the rank of Deputy Inspector.

''In addition to the Commissioner of Traffic Control the Traffic Control Unit shall consist of such members of the police force as may be assigned to said unit.''

This ordinance was passed as an emergency measure. Thereafter the Director of Public Safety (stipulated to be the appointing authority of the Police Department of the City of Cleveland) appointed Sam Skerotes, then a member of the Police Department, holding the classification or rank of Lieutenant, Commissioner of Traffic Control, at a rate of pay of a deputy inspector. It is the claim of the relators, as stated above, that because of such appointment there is a vacancy in the rank of Lieutenant of Police and, therefore, relators seek an order of this court directing the appointing authority to fill such vacancy and such vacancies that occur because of such appointment in the ranks of sergeant and patrolmen from the eligible list for each rank as certified by the Civil Service Commission. The relators head the list for appointment as lieutenant, sergeant and patrolmen on the civil service lists for these ranks.

It is clear from the stipulations of fact that the appointment of Lieutenant Sam Skerotes to the office of Commissioner

of Traffic Control was not made from a civil service list created as a result of competitive examination for such rank by the Civil Service Commission. Nor was the appointment of Sam Skerotes made on a temporary basis as provided by Section 130 of the Charter. The place of the Commissioner of Traffic Control in the police table of organization fixing the salary schedule as amended effective February 5, 1958 (Section 1.3502), follows the rank of Deputy Inspector. Sam Skerotes was appointed Commissioner of Traffic Control October 5, 1962. At that time, as has always been true, the rank of Captain was one grade ahead of that of Lieutenant in the table of police organization. The table of organization places the rank of Commissioner of Traffic Control immediately below that of Deputy Inspector. This is an indication that that rank is superior to the rank of Captain. Therefore, aside from the fact that there was no available civil service list for Commissioner of Traffic Control, a legal appointment under civil service could not be made by jumping the appointee from Lieutenant to Commissioner of Traffic Control and past the rank of Captain if the rules for appointment under civil service are followed. Such an appointment would be a nullity. The rule that the Civil Service Commission must approve payrolls as provided by paragraph 135 of the Charter, which could not have been followed as to Sam Skerotes as Commissioner of Traffic Control, is clearly demonstrated by the stipulations of fact. This fact is also evidence that the appointment of Sam Skerotes as Commissioner of Traffic Control, within the classified service, could not have been made, and, in fact, was not so intended. The only authority for such an appointment is found in the provisions of Section 143.361, Revised Code, *supra*. There it is provided that the office of Commissioner of Traffic Control must be filled by appointment of one who is a member of the Police Department. It is also clear that in taking the appointment of Commissioner of Traffic Control, the appointee is not advanced in rank under civil service rules. His status as a Lieutenant of Police must continue in order to hold the office of Commissioner of Traffic Control, and, if while **Commissioner of Traffic Control, he** should seek advancement in rank under civil service, he would be compelled to take the test for captain for which examination he would be eligible.

It is claimed, however, that by the provisions of Section 133 of the Charter the salary designated for Commissioner of Traffic Control is beyond the limits of the rank of that for a lieutenant; that such fact under Section 133 of the Charter, *supra*, constitutes a promotion.

This section cannot legalize a promotion in violation of the fixed rules of eligibility and was not so intended. It is also clear that the provisions of this section of the Charter refer to promotions within the classified service and have no application to the appointment of a Commissioner of Traffic Control, which appointment cannot be made unless the officer in question is an officer appointed from an eligible list certified by the Civil Service Commission in cities having a population of over seven hundred thousand. It was the clear intent of the Legislature in passing Section 143.361, Revised Code, and of the city council in passing Section 1.350201 of the Codified Ordinances of the City of Cleveland, that the appointment and service of a Commissioner of Traffic Control would be at the pleasure of the appointing authority.

While it is true under the authority of *State, ex rel. Canada,* v. *Phillips, Dir.,* 168 Ohio St. 191, wherein it is held in paragraphs one, two and three of the syllabus:

"1. The appointment of officers in the police force of a city represents the exercise of a power of local self-government within the meaning of those words as used in Sections 3 and 7 of Article XVIII of the Ohio Constitution.

"2. Provisions of a city charter, for appointment to a position in the competitive classified service of the city from among the three candidates highest on the eligible list, authorize appointment as a deputy inspector of police of the candidate second highest on such list, notwithstanding that a state statute (Section 143.34, Revised Code) requires, with respect to a vacancy in a position above the rank of patrolman in a police department, that the candidate highest on the eligible list be appointed.

"3. The authority of the General Assembly, to enact laws applicable to cities pursuant to Section 10 of Article XV of the Constitution, is an authority to enact such laws to be applicable in cities only where and to the extent that such laws will not

restrict the exercise by such cities of their powers of local self-government."

that a charter provision of a city cannot be restricted by general law, the rule of this case is not applicable where the state statute involved is not in conflict with a charter provision which deals with positions held under the classified service. Under the authority of Section 143.361, Revised Code, it is here provided that a Commissioner of Traffic Control be appointed from the members of the Police Department without competitive examination, and while holding such rank at the pleasure of the appointing authority he is to retain his civil service status by the rank held at the time of the appointment.

If it be held that the appointment of a Commissioner of Traffic Control requires the appointee to surrender his rank as a police officer, which he must have to be eligible for the appointment, thus creating a vacancy, it being provided that he serve in the capacity of Commissioner of Traffic Control without civil service protection, and at the will of the appointing authority, then after his appointment he could be dismissed from the service without trial on charges legally presented but at the whim of the appointing authority. No such fantastic situation was intended as is clearly shown by the provisions of Section 143.361, Revised Code, and Section 1.350201 of the Codified Ordinances of the City of Cleveland.

The writ is denied.

*Writ denied.*

SILBERT, C. J., concurs.

CORRIGAN, J., dissenting. For the reasons given hereafter, I am compelled to disagree with the opinion and judgment of my esteemed colleagues in this case. There is some repetition herein of parts of the majority opinion but such is deemed necessary for continuity.

We have before us an original action in this court in mandamus. The relators are members of the Cleveland Police Department and as such, after having taken competitive civil service examinations for promotion, are now on the eligible

lists for promotion within the classified services. Three of the relators are on the list for promotion to lieutenant and two for the rank of sergeant.

The respondents are the Mayor of Cleveland, the Director of Public Safety, and the three members of the Cleveland Civil Service Commission. It is stipulated that the director is the appointing authority for all officers in the Police Department and that the Civil Service Commission certifies the names of persons then appearing on the eligible list for promotion.

Relators Hanton, Duff, Lennert and Lauerhauss head the civil service list as of February 18, 1965, in that order for promotion to lieutenant. Pope and Viancourt head the promotional list for sergeant.

Section 1.350201 of the Codified Ordinances of the City of Cleveland provides as follows:

"There is hereby established a Traffic Control Unit within the Division of Police to be headed by a member of the Division of Police appointed as such head and designated Commissioner of Traffic Control, who shall receive compensation at the rate fixed for the rank of Deputy Inspector.

"In addition to the Commissioner of Traffic Control the Traffic Control Unit shall consist of such members of the police force as may be assigned to said unit."

The position of Commissioner of Traffic Control is provided for in the Table of Organization in the Division of Police as established by Section 1.3502 of Cleveland Ordinance No. 1960-63. This ordinance reads:

"Section 1.3502, Division of Police.

"There shall be and there is hereby established a Division of Police in the Department of Public Safety to be administered and controlled by a Chief of Police subject to the provisions of the Charter and ordinances of the City of Cleveland and to the direction of the Director of Public Safety.

"The Division of Police shall comprise the police force of the City of Cleveland and shall consist of the following ranks of such number of persons in each rank, who shall be appointed by the Director of Public Safety, unless otherwise provided by Charter, and who shall receive the annual compensation fixed by the Director of Public Safety, within the schedule of compensation hereby established for each rank:

|  | "Minimum | Maximum |
|---|---|---|
| "1 Chief of Police | $14,364.00 | $15,720.00 |
| 4 Inspectors | 12,000.00 | 12,534.00 |
| 11 Deputy Inspectors | 10,380.00 | 10,878.00 |
| 1 Commissioner of Traffic Control | 10,380.00 | 10,878.00 |
| 24 Captains, one of whom shall be a woman | 9,516.00 | 9,978.00 |
| 68 Lieutenants, one of whom shall be a woman | 8,016.00 | 8,448.00 |
| 130 Sergeants, 3 of whom shall be women | 7,278.00 | 7,674.00 |
| 2500 Patrolmen, 50 of whom shall be women | | |
| First Year | 5,574.00 | 5,574.00 |
| Second Year | 6,096.00 | 6,096.00 |
| For all subsequent years .. | 6,600.00 | 6,960.00 |

"No person holding any of the above ranks in the Department of Public Safety shall perform any work which is of the same nature as or included within the duties of other classified employees of the city except as is immediately necessary to the performance of the duties of such rank and as is necessarily incident thereto.

"* * *."

Clearly, this ordinance establishes the table of organization of the Division of Police including the rank of one Commissioner of Traffic Control, the rank of sixty-eight lieutenants, and the rank of one hundred and thirty sergeants.

It is the contention of relators that by reason of having successfully taken competitive examinations given by the civil service commission and being placed in their respective positions on the eligible lists for certification for promotion to lieutenant and sergeant, which list expired on February 18, 1965, one of them on the list for lieutenant is entitled to promotion by reason of a vacancy in that rank caused by the appointment of Lieutenant Sam Skerotes as head of the Traffic Control Unit and his designation as Commissioner of Traffic Control on October 5, 1962.

Lieutenant Skerotes was appointed head of the Traffic

Control Unit and designated as Commissioner of Traffic Control under favor of Ordinance No. 1896-58, Section 1.350201 of the Codified Ordinances of the City of Cleveland, *supra*.

On being appointed head of the Traffic Control Unit and designated as Commissioner of Traffic Control, Lieutenant Skerotes was advanced in rank according to the ranks established by Section 1.3502, *supra*, and his salary was increased from the pay of a lieutenant to the salary band of a deputy inspector under the same ordinance. This salary increase was beyond the limits fixed for the grade of lieutenant.

The Charter of the City of Cleveland, Chapter 27, Section 133, provides:

"Whenever practicable, vacancies shall be filled by promotion. *Any advancement in rank or increase in salary beyond the limits fixed for the grade shall constitute a promotion.* Lists shall be created and promotions made therefrom of candidates in the same manner as original appointments; provided, however, that less than three shall constitute an eligible list, and the appointing authority shall appoint from the eligible list. (Effective November 8, 1938.)" (Emphasis added.)

Here we have a positive rule set out in the charter to the effect that any advancement in rank or increase in salary beyond the limits fixed for the grade shall constitute a promotion. As a general rule, an essential requisite of a valid municipal ordinance is that the provisions thereof shall not conflict with a positive provision of the municipal charter. No ordinance can conflict with a city charter provision and be effective. See *Reed* v. *City of Youngstown*, 173 Ohio St. 265.

The first ordinance in question here, Section 1.350201, purporting to authorize the appointing and designating of a Commissioner of Traffic Control to receive the pay of a deputy inspector, without considering such appointment and designation a promotion, is patently in conflict with Section 123, Chapter 27, of the Charter of the City of Cleveland. The ordinance cannot and does not supersede the charter provision.

The language employed in this section of the Charter is clear. Its provisions do not need any interpretation. It is distinguished by its simplicity. It is not susceptible of any other meaning than that an advancement in rank or an increase in salary above that of the grade in which the individual is classi-

fied constitutes a promotion. The charter provision speaks for itself, and the legislative effort did not change it. Being in conflict with the Charter, it is ineffective as far as considering such appointment and designation of Lieutenant Skerotes as Commissioner of Traffic Control to be anything other than a promotion.

It should be further noted that under the Cleveland Charter, Chapter 27, Section 126, the civil service of the city is divided into the classified and unclassified service and the only member of the Division of Police included in the unclassified service is the Chief of Police. This section further provides that the classified service shall comprise all positions not specifically included by the Charter in the unclassified service.

The classified service, by the same section, is divided into three classes known as the competitive class, the noncompetitive class and the ordinary unskilled labor class. The noncompetitive class includes all positions requiring peculiar and exceptional qualifications of a scientific, managerial, professional or educational character as may be determined by the commission, the fitness of applicants for which may be determined by noncompetitive tests. The position of Commissioner of Traffic Control is not at the present time and cannot conceivably be considered as coming within this noncompetitive class. This point was not urged by either side in the case, but in the exercise of an abundance of circumspection it is felt that it should be covered in this opinion.

It is worthy of note also that Section 10, Article XV of the Ohio Constitution reads:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

The second ordinance, Section 13502, No. 1930-63, provides for one Commissioner of Traffic Control, sixty-eight lieutenants, and one hundred thirty sergeants. When Lieutenant Skerotes was appointed and designated Commissioner of Traffic Control, he was promoted under the terms of the Charter of the City of Cleveland and necessarily a vacancy occurred in the rank of lieutenant. He cannot hold the ranks

of lieutenant and Commissioner of Traffic Control at the same time. In ancient Greek mythology there was a prophetic sea deity in the service of Poseidon (Neptune) who, when seized, could assume different shapes or forms so as to avoid being identified and being required to prophesy. Such tales were entertaining to the populace and fine tributes to the imaginations of the mythmakers but beyond reality. The chief contribution in this myth was the gift of a new word to the lexicographers. That word was ''protean'' as describing the characteristic of readily assuming different shapes or forms. Lieutenant Skerotes cannot be described as protean in our instant situation because, whether above the bar of a lieutenant or above the insigne of the Commissioner of Traffic Control, the visage is that of Skerotes. And we are dealing with stern reality in connection with the integrity of civil service laws as they apply to that most important arm of the government, the division of police. One of the relators on the civil service list for promotion to the grade of lieutenant is entitled to be appointed to that vacancy.

Mention is not made in the briefs of petitioners or respondents of the applicability to our instant case of Section 143.361, Revised Code. Nor was this statute alluded to in oral argument. It provides:

''In any city with a population of seven hundred thousand or more as shown by the last federal census, which by action of the legislative authority establishes within the police department a unit assigned to the control of traffic, a member of the police department of said city who is appointed the head of such unit by whatever title designated, shall not be subject to competitive examination, notwithstanding Section 143.34 of the Revised Code. The status within the uniform ranks of such member while serving as the head of such traffic unit shall remain unchanged and notwithstanding the compensation fixed for such position, he shall not acquire any right to promotion other than such rights to promotion which apply to the rank held at the time of appointment as head of such traffic control unit.''

This section became effective on September 4, 1957, the same month Cleveland City Ordinance No. 1.350201, given above, became effective.

In disposing of the problem before us, we must consider what effect, if any, this statute has on our factual situation in view of the provisions of the City of Cleveland Charter, Chapter 27, Section 123. Does the Charter control the manner of promotion in the police force of a city as representing the exercise of a power of local self-government within the meaning of those words as used in Sections 3 and 7 of Article XVIII of the Ohio Constitution? Or is a state statute (Section 143.361, Revised Code), which specifically conflicts with the provision of the Charter as to the effect of an increase in salary beyond the limits fixed for the grade held on the appointment of a member of the police department to the position of head of the traffic control unit therein, the controlling law applicable thereto?

The Supreme Court of Ohio has spoken on the basic question involved in the case of *State, ex rel. Canada,* v. *Phillips, Dir.,* 168 Ohio St. 191. It was contended there that the promotion of officers in the police force of a city represents the exercise of a power of local self-government within the meaning of those words as used in Sections 3 and 7 of Article XVIII of the Ohio Constitution and that therefore the provisions of a section of the City of Columbus Charter could be applied notwithstanding their conflict with Section 143.34, Revised Code. The Supreme Court upheld this contention of respondents in that case and stated in paragraph seven of the syllabus:

"Where a municipality establishes and operates a police department, it may do so as an exercise of the powers of local self-government conferred upon it by Sections 3 and 7 of Article XVIII of the Constitution; and, if it does, the mere interest or concern of the state, which may justify the state in providing similar police protection, will not justify the state's interference with such exercise by a municipality of its powers of local self-government."

It is clear to this member of the court that the organization and regulation of its police force are within a municipality's powers of local self-government under the Ohio Constitution and case law, and Section 143.361, Revised Code, is applicable only where a city has failed to enact charter or legislative provisions on the subject covered by the statute. Such a law may not restrict the exercise by such cities of their powers of local self-government where the city has adopted charter provisions

110

or municipal legislation on the subject. If there is a conflict on the subject between the charter provision and the statute, the charter controls.

A writ of mandamus, in my opinion, should issue directing the respondents, Ralph S. Locher and John W. McCormick, to fill the existing vacancy in the rank of lieutenant and any other vacancies thereby created in the Cleveland Police Department from the names certified to them from the existing eligible list by the Cleveland Civil Service Commission.